Gibson v. Ducker & Sons.

---

JOHN M. GIBSON, Appellant, v. C. M. DUCKER, W. S. DUCKER and L. R. DUCKER, Partners, doing business under the firm name of C. M. DUCKER & SONS, and W. F. LAMBERT, Respondents.

Springfield Court of Appeals, April 7, 1913.

1. NEW TRIAL: Order Granting: Not Disturbed Because of Court's Erroneous Reason. The trial court having given an erroneous reason for the granting of a new trial, the appellate court will not set same aside because thereof, provided a correct reason is assigned by the party seeking a new trial, which, from the record, appears to be a good and sufficient reason for sustaining the motion.

Gibson v. Ducker & Sons.

2. ————: Discretionary With Trial Court: Function Not to be Abused. The appellate court will not interfere with the order of the trial court in granting a new trial on the ground that the verdict is against the weight of evidence, unless the discretion of the trial court has manifestly been abused.

3. ————: Motion For: Appellate Court Will Not Weigh .Evidence to Sustain. Where a motion for a new trial has been overruled by trial court, appellate court will not grant a new trial when it is necessary to weigh the evidence to do so.

4. ————: Reasons Assigned by Trial Court: Erroneous Statement of. Reasons given by trial court for sustaining motion for new trial reviewed. *Held*, that motion was sustained because court considered that there was no evidence to support the verdict, although the reason assigned by the trial judge was that "the testimony introduced in the cause is insufficient to connect the defendants, C. M. Ducker, W. S. Ducker and L. R. Ducker, with the alleged arrest."

5. MASTER AND SERVANT: Wrongful Act of Servant: Master's Liability. The master is civilly liable for the wrongful acts of his servant when done in the course of his employment, even though the master was not cognizant thereof.

6. ————: Torts of Servant: Authorized or Ratified. A master may be bound for the torts of a servant either on account of having given authority for their commission or by acquiescence therein and ratification thereof.

7. UNLAWFUL ARREST: Evidence: Held Sufficient to Bind Principal. The evidence in an action against a police officer and the proprietors of a hotel for unlawful arrest by the police officer is reviewed and held sufficient to connect the hotel proprietors with the act of the officer in making the arrest and to charge them with liability.

Appeal from Butler Circuit Court.—*Hon. Jesse C. Sheppard*, Judge.

REVERSED AND REMANDED (*with directions to enter judgment on the verdict*).

*Phillips, Lentz & Phillips* for appellant.

(1) The trial court having sustained the motion for a new trial on a particular ground assigned in the motion, necessarily overruled the motion as to the

other grounds therein contained. Thielle v. Railroad, 140 Mo. 335; Bradley v. Reppell, 133 Mo. 560. (2) The motion for a new trial was sustained, so far as the specifications in the order of the court shows, on the ground that the instruction in the nature of a demurrer to the evidence ought to have been sustained; which is equivalent to saying that there was no evidence to sustain the verdict. This makes it necessary for this court to examine and weigh the evidence. The question is was there any substantial testimony to sustain plaintiff's cause of action? Crawford v. Stock Yards Co., 215 Mo. 402-5. (3) The master having expressly directed the doing of the act, from the wrongful execution of which the injury results, he must, in law, be treated as having authorized all that was done by the servant strictly in furtherance of the end sought by his orders, and with a bona fide purpose on the servant's part to execute them, even though he did not know of or authorize them. Schmidt v. Adams, 18 Mo. App. 434; Vogeli v. Pickle, M. & G. Co., 49 Mo. App. 645; Lamb v. Davidson, 69 Mo. App. 113; Garetzen v. Dunkel, 50 Mo. 107; Harriman v. Stowe, 57 Mo. 98; Snyder v. Railroad, 60 Mo. 416; Mound City Co. v. Conlann, 92 Mo. 229; Whitehead v. Railroad, 99 Mo. 270; State v. McCance, 110 Mo. 405; Chicago H. Co. v. Bryan, 195 Mo. 588; Barree v. Cape Girardeau, 197 Mo. 391; Wahl v. Transit Co., 203 Mo. 272. (4) The rule of law is firmly established that the master is civilly liable for the tortious acts of his servants, whether of omission or commission, and whether negligent, fraudulent or deceitful, when done in the course of his employment, even though the master did not authorize or know of such acts, or may have disapproved and forbidden them. Wahl v. Transit Co., 203 Mo. 272; Barree v. Cape Girardeau, 197 Mo. 391; Chicago H. Co. v. Bryan, 195 Mo. 588; Whitehead v. Railroad, 99 Mo. 270; Garetzen v. Dunkel, 50 Mo. 107. (5) The relation of mas-

ter and servant exists where the person sought to be charged as master either employed or controlled the servant, or had the right of control over him at the time of the injury, or expressly or tacitly assented to the rendition of the particular service by him. He must, at the time, have had. the right to direct the action of the servant and to accept or reject its rendition by him. Wood on Master and Servant, sec.. 306; Cooley on Torts, sec. 533; Mound City P. Co. v. Conlan, 92 Mo. 229. (6) The fact that the servant disobeys the instructions of the master does not relieve the latter from liability. Mound City P. Co. v. Conlan, 92 Mo. 229; Garetzen v. Dunkel, 50 Mo. 107. (7) The trial court was acting entirely outside of and beyond any jurisdiction or authority which it possessed, when it attempted to not only set aside the verdict of the jury but to render judgment in favor of the defendants or any of them. The only jurisdiction which the court possessed at the time was to either sustain or overrule the motion. If the motion was sustained, the case then stood just as if it had never been tried and the court could only proceed in the case by a retrial of the case. Kortjohn v. Altenbernd, 14 Mo. App. 344. (8) An actual manual arrest is not necessary to constitute false imprisonment. A demonstration looking to arrest, which to all appearances can only be avoided by submission, operates as effectually if submitted to, as if the arrest had been forcibly accomplished, without such submission. Dunley v. Wolferman, 106 Mo. App. 51; Ahem v. Collins, 39 Mo. 151; Boeger v. Langenbery, 97 Mo. 396; Cooley on Torts, sec. 170.

*Stewart L. Clark* for respondents.

(1)    The trial court has a discretion to grant a new trial, and an appellate court will not interfere with the exercise of that discretion, however much it

Gibson v. Ducker & Sons.

may disagree with the trial court upon such a ruling, unless the case is such that no verdict in favor of the party to whom the new trial is granted can ever be allowed to stand. Lockwood v. Insurance Co., 47 Mo. 50; Reid v. Insurance Co., 58 Mo. 429; Hewitt v. Steele, 118 Mo. 463; Bank v. Wood, 124 Mo. 72; Lawson v. Mills, 130 Mo. 170; Parker v. Cunningham, 130 Mo. 348; Hoepper v. Hotel Co., 142. Mo. 387; Haven v. Railroad, 155 Mo. 232; Kuenzel v. Stevens, 155 Mo. 285; Grace v. Railroad, 156 Mo. 301; Graney v. Railroad, 157 Mo. 678; Coleman v. Cole, 158 Mo. 260; Roberts v. Telegraph Co., 166 Mo. 385; Herndon v. Lewis, 175 Mo. 125; Emmons v. Quade, 176 Mo. 29; Ottomey v. Pritchett, 178 Mo. 160; Warner v. Railroad, 178 Mo. 125; Casey v. Transit Co., 186 Mo. 229; Lovenhart v. Railroad, 190 Mo. 342; McCarty v. Transit Co., 192 Mo. 396; Lead & Zinc Co. v. Webster, 193 Mo. 351; Crawford v. Stockyards Co., 215 Mo. 394; Kinlen v. Railroad, 216 Mo. 145; Cornet v. Cabrilliac, 228 Mo. 212; Johnson v. Grayson, 230 Mo. 380; Foley v. Harrison, 233 Mo. 460; Bag Co. v. Kehoe, 74 Mo. App. 627; State ex rel. v. Todd, 92 Mo. App. 4; Secrist v. Eubanks, 104 Mo. App. 113; Hill v. Telegraph Co., 105 Mo. App. 572; Queensware Co. v. Smith, 107 Mo. App. 13; Delaplain v. Kansas City, 109 Mo. App. 107; Lowenstein v. Transit Co., 117 Mo. App. 371; Sharp v. Odom, 121 Mo. App. 565; Langstaff v. Webster Groves, 122 Mo. App. 510; Karnes v. Winn, 126 Mo. App. 712; Canterbury v. Kansas City, 130 Mo. App. 1; Morris v. Railroad, 136 Mo. App. 393; Snickles v. City of St. Joseph, 139 Mo. App. 187; Turpenning v. Nicholls, 140 Mo. App. 505; Berryhill v. Supreme Tribe of Ben Hur, 151 Mo. App. 415; Rigby v. Transit Co., 153 Mo. App. 330; Hawver v. Transit Co., 154 Mo. App. 452; Dent v. Traction Co., 145 Mo. App. 66; Fair v. Preston, 157 Mo. App. 324; Digges & Garanflo v. Phillips, 138 S. W. 910; Seeger v. Silver Co., 193 Mo. 400; Allen v. Railroad, 151 S. W. 762. (2) Where a

new trial is granted, the appellate court will look to the entire motion, whether the trial court attempted to limit its order to one or more of the grounds set up in the motion by its opinion given at the time, or even by the express statement contained in the order itself; and, if any of the grounds are well taken, the order will be affirmed. Hill v. Telegraph Co., supra; Hewitt v. Steele, supra; Secrist v. Eubanks, supra; Lead & Zinc Co. v. Webster, supra; Morelock v. Railroad, 112 Mo. App. 640; Chlanda v. Transit Co., 112 S. W. (Mo. App.) 249; Taylor v. Railroad, 130 Mo. App. 582; Crawford v. Stockyards Co., 215 Mo. 394; Chandler v. Gloyd, 217 Mo. 394; Graefe v. Transit Co., 224 Mo. 232; Hawman v. McLean, 139 Mo. App. 429. (3) And where the trial court in granting a new trial, gave a wrong reason therefor, it is not ground for disturbing the ruling on appeal. Descheur v. Railroad, 200 Mo. 310; Crawford v. Stockyards Co., 215 Mo. 394; Whitsett v. Bank, 138 Mo. App. 81; Williams v. Railway Co., 233 Mo. 666. (4) It is undisputed that Walter Ducker gave no instruction to Lambert to arrest the plaintiff if he failed to pay the sum demanded, and, even if Lambert did arrest him, he was acting without the scope of his authority, and the action of the court in sustaining the motion for a new trial on behalf of the defendants Ducker was proper. Milton v. Railroad, 193 Mo. 46. (5) The facts established by plaintiff did not show that he was arrested by the officer, and the action of the court in sustaining the motion for a new trial on behalf of defendant Lambert was a proper exercise of discretion and should be upheld. Cramer v. Harmon, 126 Mo. App. 54.

STATEMENT.—This was a suit for damages for an alleged unlawful arrest in which the plaintiff prevailed before a jury. The court sustained a motion for a new trial and plaintiff has appealed, alleging this action on the part of the court as error.

It appears from the record that plaintiff was a traveling salesman (and, incidentally, a licensed attorney) and that he stopped as a guest at the Wright Hotel, in the city of Poplar Bluff, conducted by C. M. Ducker and Sons, on the night of February 25, 1912. It may be stated here that this firm was composed of defendants C. M. Ducker, W. S. Ducker and L. R. Ducker. Plaintiff remained as a guest at the hotel until about one or two o'clock the next afternoon. He did not return to the hotel to take his dinner until between 1:30 and 2 o'clock p. m., after the regular dinner hours and after the dining room doors had been closed, and was compelled to go to a restaurant for that meal. When he was ready to settle his bill at the hotel, W. S. Ducker who was in charge of the office demanded that he pay the sum of $1.50—for lodging, breakfast *and dinner*—the hotel being operated on the American plan with rates of two dollars per day. The plaintiff refused to pay for the dinner he did not get and left one dollar on the counter to pay for lodging and breakfast, and took his grips and went to the depot to leave on a south-bound train. While he was waiting in the depot, W. S. Ducker and W. F. Lambert, one of the regular police officers of the city of Poplar Bluff, approached him. The plaintiff's testimony is that Lambert informed him the Duckers were running a first-class hotel and that they claimed he was owing fifty cents, and said, "You will have to go up there and pay that up;" that he told the officer he didn't know that it was any of his business and that he had settled, to which the officer replied by saying that "If I didn't go back there and pay that bill, he wouldn't let me leave right there until I paid it. He would take me to jail, he says;" that on asking the officer if he had a warrant, the officer answered that he did not, but that he didn't have to have a warrant to arrest him; that the officer raised his club and informed plaintiff that he had been an officer for eight and one-half years, and

said, "Do you mean to tell me I don't know my business?" The plaintiff testified that at the time the officer told him he could make the arrest, W. S. Ducker was present, but that Ducker then left them and that it was after this that the officer raised his club in a menacing manner. Plaintiff further testified that he was compelled to go back to the hotel with the officer and that when he reached the hotel in company with the officer he called several witnesses before he paid the fifty cents telling them he wanted them as witnesses in a transaction—that he was being made to pay money he did not owe; that when he paid the fifty cents, W. S. Ducker gave him a receipt for three-fourths of a day, paid in full, and that the officer stood around a few minutes after the payment and then left.

The deposition of James H. Looney was read in evidence by the plaintiff. It shows that he was present in the hotel office when the officer and plaintiff came back, and witnessed the payment of the fifty cents, and saw those present at the time—W. S. Ducker, the officer in uniform, the plaintiff, and several others; that plaintiff stated that he had been arrested and returned to the hotel; that W. S. Ducker then said that plaintiff had not been arrested but only detained, and that the officer made practically the same statement; that plaintiff then paid the fifty cents and was given a receipt; that in a conversation with Ducker the next day "Mr. Ducker told me it was not his custom to treat people in this manner, but he had sent the policeman down after Mr. Gibson just to show him he could collect that extra fifty cents;" also that he had a conversation with the policeman who said he had "authority to arrest the man in a case like that."

The officer, Lambert, one of the defendants, testified in part as follows: "Mr. Ducker came down there; I was at the depot, myself. Mr. Ducker says, 'There is a man here in the depot that owes me fifty cents; I wish you would collect for me.' I says, 'All right, I

will do my best. He showed me the man. This is the man here (indicating). I went to him. I says, 'You owe this man any money? If you do, why he wants me to collect it; you had better pay it.' He says, 'I don't owe him anything.' I says, 'Well, I don't know that you do myself.' He argued around there a little while, and I says, 'Well, you had better get your grip and go up the hill to him and settle that bill without any trouble about this thing;' so he picked up his grip and went up the hill. I walked along by the side of him; and I supposed he settled the bill. I don't know that he did."

"Q. You heard Mr. Gibson testify to your conversation, in which you menaced him or drew your club there in the smoking room. Tell the jury whether that happened or not. A. No, sir; we have to carry our billy in our hands; we have to do that; that is the orders from the chief of police and approved by the mayor; we have to carry our clubs in our hands while on duty. I did not tell Mr. Gibson at the time that I was putting him under arrest. I did not tell him he was arrested at all. I did not take hold of him in any way. He said, 'You can't arrest me here.' I said, 'I can arrest any man that violates the law of the State of Missouri or the city of Poplar Bluff without a warrant,' which is a fact." On cross-examination he was asked: "Were you undertaking to collect that bill for Mr. Ducker?" His answer was: "Well, I didn't undertake to collect it at all. I told him if he owed the bill, that was the way to keep out of trouble. I meant he was liable to get into a lawsuit or something of that kind. I was not advising him as counsel. I am no lawyer. I was advising him. I don't know whether he owed it or not. He said he didn't owe it." "Q. Did you pick up his grips and go with him to the hotel? A. Walked along at the side of him. Right up with him."

The following appears in the testimony of W. S. Ducker: "I went down to the depot to see Mr. Lambert. To get him to collect the balance due. I went to Mr. Lambert because he is an officer. He is not a lawyer. I don't think he is a justice of the peace. I don't think he is a constable. He is an officer."

It further appears that a number of people were present both at the depot and in the hotel office when Lambert played his part in the collection of the fifty cents.

The jury returned a verdict in favor of the plaintiff for actual damages in the sum of $150 and for punitive damages in the sum of $100. The defendants filed a motion for a new trial alleging eight grounds, but for the purpose of determining this case it will be necessary to show only the first and the sixth and they are as follows:

"1. Because the verdict is against the evidence and the weight of the evidence."

"6. Because the court erred in refusing the instruction in the nature of a demurrer to the evidence offered by the defendants C. M. Ducker, W. S. Ducker and L. R. Ducker, at the close of the evidence offered by the plaintiff, over the exceptions of the defendants."

The court in its order sustaining defendants' motion for a new trial gave certain reasons, as follows: "And the court having now seen and heard said motion for a new trial, and being fully advised in the premises, all and singular, doth sustain the said motion as to all the defendants, for the reason that the testimony introduced in this cause is insufficient to connect the defendants C. M. Ducker, W. S. Ducker and L. R. Ducker with the alleged arrest, and the court erred in not sustaining the demurrer offered by the defendants to the testimony introduced in this case as to the defendants C. M. Ducker, W. S. Ducker and L. R. Ducker, and the motion is sustained as to W. F. Lam-

bert because the verdict is an entirety and not for the reason that there was no testimony to support a verdict as to W. F. Lambert.''

There are two points to be decided in this case: First, did the court grant the motion for a new trial on the ground that it was against the weight of the evidence or because there was no evidence to support the verdict? Second, if the court set the verdict aside because there was no evidence to support it, does the record justify such action?

## OPINION.

FARRINGTON, J. (after stating the facts).— The appellate court will not set aside an order granting a new trial because the trial court gave an erroneous reason for granting it, provided a correct reason is pointed out by the party seeking a new trial which appears from the record to be a good and sufficient reason for sustaining the motion. It is also true that if the trial court grants a new trial on the ground that the verdict is against the weight of the evidence, that being a function peculiar to the trial court, the appellate court will not interfere with the order, unless the discretion of the trial judge has manifestly been abused. The decisions of this State, cited by respondents, are clearly in favor of this proposition. Where there is evidence to sustain a verdict and the trial court has not set the verdict aside on the ground that it is against the weight of the evidence, the appellate court will not interfere with the action of the trial court, because, in cases at law, the appellate courts will not set aside orders of the trial court granting new trials, nor will they grant new trials where the motion for a new trial has been overruled when in order to do so the appellate court must weigh the evidence.

In this case, we must first determine whether the trial court sustained the motion on the ground that, having weighed the evidence, the verdict was against the weight thereof. We think the reasons set forth by the trial court clearly indicate that the new trial was granted to the Duckers because there was no evidence on which a verdict could stand, and not because there was some testimony but not sufficient, according to the scales of the trial judge, to justify the verdict. It is true, the trial judge in his order used the word "insufficient," and this, the respondents say, indicates a deliberation on the weight of the evidence. However, in the same sentence in which this word is used, the trial judge sustains the motion on the ground that the demurrer offered should have been sustained, and this is a direct declaration on the part of the trial court that there was no evidence to weigh; and, following also in the same sentence, and indicating his reason, he sets the verdict aside as to Lambert because the verdict is an entirety and not for the reason that there was no evidence to support it. If we are to hold that the trial judge meant by saying that there was insufficient testimony to support the verdict that it was against the weight of the evidence, we convict him by saying in one breath that there is evidence, but of little weight, and in the next breath that there is no evidence; if, on the other hand, we hold that by the use of the word "insufficient," followed by the similar statement he meant there was no evidence, his reason for setting it aside is consistent. We conclude, as did the Supreme Court in the case of Crawford v. Kansas City Stock Yards Co., 215 Mo. 394, 402, 114 S. W. 1057, that the trial court set the verdict aside because there was no evidence to connect the Duckers with the arrest.

The case of Foley v. Harrison, 233 Mo. 460, 507, 136 S. W. 354, relied upon by respondents, is in fact an authority in favor of the contention of the appel-

lant. The court in that case granted a new trial merely "for the reason that the plaintiff is not entitled to recover." The Supreme Court held that there was no recital in the order sustaining the motion other than the one above quoted, and that the Supreme Court could not say from this that the trial court did not set aside the verdict as being against the weight of the evidence. In the case before us, the trial court did give as a reason that the demurrer to the evidence should have been sustained as to the Duckers, and that the motion for a new trial was *not* sustained as to Lambert for the reason that there was no evidence to support the verdict as to him. A careful reading of the reasons given by the trial judge can lead to no other conclusion than that he sustained the motion because he considered there was no evidence to support the verdict, and we will therefore now consider the second point to ascertain whether or not the trial court was justified in sustaining the motion on that ground; and if we find that there was any evidence from which an inference could reasonably be drawn that the Duckers were connected with and responsible for the unlawful arrest and detention, the verdict of the jury must stand and we must hold that it should, not have been set aside on the ground that there was no evidence to support it.

It is contended by the respondents that although W. S. Ducker procured the services of the policeman, Lambert, to collect the fifty cents, they did not employ Lambert or authorize him to make the arrest or to detain the appellant, and both Lambert and W. S. Ducker testified that Lambert was not employed or authorized by W. S. Ducker to take the appellant into custody; and respondents contend that because the appellant failed to show any express order or authority given by them to Lambert to make the arrest, the officer in making the arrest acted beyond the scope of the authority which the Duckers gave him, and that

for his wrongful act they, the Duckers, could not be held responsible.

On this question, the respondents rely upon the case of Milton v. Railroad, 193 Mo. 46, 91 S. W. 949, in which the majority of the Supreme Court held that a detective agency employed for the purpose of investigating a crime and reporting back to the railroad company was not given authority and it was not within the scope of their employment to make an arrest of any suspects, and that where an arrest was made under such authority the railroad company would not be held responsible; and in that case, the rule is approved that if one is employed to collect a debt, it is not within the scope of his authority to arrest the debtor. It will be observed that the court in that case said it was very doubtful from the record whether the suspect was arrested at the instance of the detective agency or the legally constituted authorities of Kansas City. However, the facts of the case before us are entirely different from the facts in that case, because there was no evidence in that case that the railroad company knew or had any notice whatever that the detective agency was about to cause the arrest nor that the railroad company ratified the action of its agent after it ascertained the facts. In the case before us, it will be noted that the plaintiff testified that before W. S. Ducker left the depot, after having pointed out the plaintiff to the officer, the officer was talking to him (the plaintiff) about arrest and was telling him that he could make an arrest under the circumstances; and although it appears that plaintiff commenced to talk to Ducker in the presence of the officer, Ducker told plaintiff he had given him an opportunity to pay, and that he must now settle with the officer. From this the jury could well infer that Ducker was approving and giving his assent to the threatened arrest. Moreover, plaintiff says he was compelled to go with his grips back to the hotel and that when he reached

the hotel office in company with the policeman, he called on bystanders to witness the fact that he was being made to pay what he did not owe and stated that he had been arrested by the officer. Ducker at that time did not disapprove of the action of the policeman, but spoke up and said, according to plaintiff's evidence, that he was not arrested but was detained, and the evidence shows that the policeman then made a similar remark. So that even though no such authority was given as the officer saw fit to exercise, and even if Ducker could not have surmised that the officer would arrest the plaintiff when he (Ducker) left the depot, he ratified such action when the officer brought the plaintiff back to the hotel and he accepted the fruits of the agent's action. He had an opportunity to disavow the act of the officer when the knowledge was brought home to him that the plaintiff had been brought back under arrest to pay this sum; this he did not do, but instead, accepted the fifty cents and closed the incident by writing a receipt. There is also evidence of some weight, from which the jury had a right to infer that Ducker was connected with the arrest from the remark made by Ducker on the following day to Looney, namely, "that it was not his custom to treat people in this manner, but that he had sent the policeman down after Mr. Gibson just to show him he could collect that extra fifty cents."

The Supreme Court in the case of Hall v. Railroad, 219 Mo. 553, 586, 118 S. W. 56, in discussing the scope of an agent's authority cites the case of Milton v. Railroad, supra, as an authority. The question in the Hall case concerned the authority of a brakeman in directing the plaintiff to perform some work in connection with the handling of some cars, and it was held that he had no such authority from his employment; but the court said: "A license could only be granted by some authorized act of the defendant, or by asquiescence of defendant for a length of time."

So in the case before us, Ducker at least acquiesced in the arrest or unlawful detention for a sufficient length of time to get the fifty cents, the full accomplishment of his purpose in procuring the services of the policeman, which, we think, clearly distinguishes this case from that of Milton v. Railroad, supra. A jury might well infer from the plaintiff's evidence as to the transaction, from the fact that Ducker went to a policeman and stood by, mute, hearing the policeman talk about arresting the plaintiff, and later accepting the benefit of the agent's act after he heard the plaintiff declare that he had been arrested and brought back to the hotel to pay what he did not owe, and from the conversation with Looney—that he had sent the policeman down after Mr. Gibson just to show him he could collect that extra fifty cents—that the acts of the policeman, if not performed under an express authority to arrest or detain the plaintiff, were at least implied, or ratified. It is the established law of this State that the master is civilly liable for the wrongful acts of his servants, whether of omission or commission, when done in the course of their employment, even though the master did not authorize or know of such acts. [Garretzen v. Duenckel, 50 Mo. 104, 107; Whitehead v. Railroad, 99 Mo. l. c. 270, 11 S. W. 751; Chicago Herald Co. v. Bryan, 195 Mo. l. c. 588, 589, 92 S. W. 902; Barree v. Cape Girardeau, 197 Mo. l. c. 391, 392, 95 S. W. 330; Wahl v. Transit Co., 203 Mo. l. c. 272, 101 S. W. 1.]

We must hold that this record does disclose some evidence from which the jury could infer that the plaintiff was arrested and compelled to go back to the hotel and that the Duckers were sufficiently connected with the act of the officer to charge them with liability. The jury having passed on this evidence and found for the plaintiff, their verdict must stand as a verity and be controlling unless the trial court saw fit in the exercise of a sound discretion to set it aside as against

the weight of the evidence. The court had no right to set it aside for the reason assigned in the order, and if that tribunal did not set it aside as against the weight of the evidence, this court cannot do so. No other reasons have been set forth by the respondents to justify the order of the trial court and we must therefore hold that the court erred in sustaining the motion for a new trial. The judgment is reversed and the cause remanded with directions to the circuit court to set aside its order sustaining the motion for a new trial and enter judgment in accordance with the verdict. All concur.