JOHN DAVIS, Respondent, v. CHICAGO ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, January 17, 1915.**

1. **FALSE IMPRISONMENT: Station Agent: Authority: Arrest.** A person, intending to become a passenger on a railway carrier, went to the station shortly before the train was due and purchased a ticket of the carrier's station agent. The conductor and porter refused to let him enter the train. He complained to the station agent who called the police and pointed the person out to them as being intoxicated. They arrested him and put him in jail and kept him until one o'clock at night. In an action for damages it was *held* that the station agent was acting in the course of his employment and that the carrier was liable.

2. ————: **Arrest Without Warrant: Abandonment of Prosecution.** A person was arrested without a warrant by a policeman who was called for that purpose by a carrier's station agent, the latter pointing him out, and was put in jail at night for several hours and then released, but a complaint was made and warant issued next morning and the case set for nine o'clock when he appeared and the case was continued to one o'clock over his protest. He appeared at the latter hour, but no one was at the place of trial and in a few hours he took a train for his home. No effort was made to apprehend him or to prose-

cute the case. After the lapse of two years on a trial for damages for false imprisonment, it was *held* that for the purpose of such a case the prosecution should be considered as abandoned by the State.

3. **ELEMENTS OF DAMAGE: Pleading.** Loss of time and loss of business, caused by false imprisonment are elements of compensatory damages, but they must be alleged in the petition.

4. **MALICE: False Imprisonment.** In an action for false imprisonment, malice was defined in the following words: "Malice as here used does not mean ill will or spite, but the intentional and wilful doing of a wrongful act in a wanton or oppressive manner and with a reckless disregard of the rights of the person affected thereby." It was *held* that under the decisions in Missouri, this was correct.

Appeal from Jackson Circuit Court.—*Hon. L. T. Dryden,* Special Judge.

AFFIRMED (*Conditionally*).

*Sebree, Conrad & Wendorff* and *Paul E. Walker* for appellant.

*Robinson & Goodrich* for respondent.

ELLISON, P. J.—Plaintiff's petition is in three counts. The first is for damages on account of defendant's servants refusing to permit plaintiff, with a proper ticket, to enter its cars as a passenger. The second is for damages resulting from defendant arresting plaintiff unlawfully, wrongfully, and maliciously, without any lawful warrant or authority, and putting him in jail for several hours in the nighttime. The third count dropped out of the case through a demurrer to the evidence thereon. There was a verdict and judgment for plaintiff on each of the other counts for both compensatory and punitive damages.

It appears that on October 30, 1913, plaintiff, intending to take passage on defendant's railroad at Lincoln, Nebraska, to his home at Belleville, on a train due to leave Lincoln at about six o'clock p. m., went to

defendant's station in company with one Murphy, his brother-in-law, at about half past five o'clock and purchased a ticket from defendant's station agent. The train was perhaps an hour late, when it came in, plaintiff attempted to get aboard one of the cars when the porter, in charge, refused to let him enter and told him to see the conductor. The conductor made no reply to his question. He went inside the station building to the ticket window and asked the agent why he was not allowed to get on the train. He wanted to know if there was anything the matter with his ticket. The agent told him there was not and went with him out to the car where the porter was standing and asked what was the reason plaintiff was not allowed to enter the car. The porter answered, "to see the conductor." It seems that for some reason the train did not pull out of the station for an hour or more. During this time plaintiff made several calls at the ticket window stating to the agent that it was necessary that he go home on that train and insisting on knowing what was the reason he could not. At one of his calls the agent telephoned the police. In a few moments two came and passed by plaintiff on the platform. They went into the station and came out with the station agent who pointed plaintiff out to them and they seized him and hauled him to the police station where he was locked in a cell and remained for several hours, when at about one o'clock in the night he was released, but directed to appear next morning at nine o'clock. He appeared and demanded a trial but he was told the matter was adjourned until one o'clock. He returned at that time and finding no one there left and the same day purchased another ticket and went home. It seems that on plaintiff being locked up, Murphy immediately set to work in an effort to get him out of jail. He got some friends and a lawyer, roused the chief of police and finally secured an order that he be released.

If the evidence in behalf of plaintiff is to be believed, (and since the verdict it must be accepted as the facts in the case) plaintiff had purchased a ticket for Belleville and was entitled to board the car which he attempted to enter, unless he was intoxicated; that being defendant's excuse for its servants not allowing him to do so. It was conceded at the trial by plaintiff that the defendant's servants had a right to exclude an intoxicated person from the train, and instructions for each party submitted the question of plaintiff's condition in that respect, to the jury. There was abundant evidence to sustain the finding that he was not intoxicated.

The first complaint by defendant is directed at plaintiff's instruction No. 4, on the first count relating to the refusal to allow plaintiff to get upon the car and to carry him home. It stated that plaintiff was entitled to a finding in his favor on that count, if defendant "without any fault on plaintiff's part," refused to let him on the train. Defendant insists that even though plaintiff was not intoxicated, yet if its servants "in good faith believed he was" they were to be excused for refusing to carry him, and that the instruction omitted that defence. As to punitive damages that is correct. But conceding that the instruction should have embodied such defensive theory, it was cured by defendant's instruction "D," which stated such good faith belief to be a defence and directed that if the jury found that to be a fact to return a verdict for defendant on the first count. The decisions of the Supreme Court to this effect are collated and discussed in Holman v. City of Macon, 177 S. W. 1078. Again, in the case of Bettoki v. Coal & Mining Co., announced December 6, 1915, and not yet reported, the same point is decided and further authorities cited.

Defendant next insists that no case was made under the second count based on the arrest and imprison-

ment of plaintiff. This insistence is founded upon the assertion that defendant's station agent had no authority to bind defendant in procuring plaintiff's arrest. In other words, that defendant was not liable for the wrong of the agent in procuring plaintiff's arrest and imprisonment. The law is that the master is liable for those acts of the servant which are performed while engaged within the scope of his employment. [Haehl v. Railroad, 119 Mo. 325, 339; Meade v. Railroad, 68 Mo. App. 92; Grayson v. Railroad, 100 Mo. App. 60, 72; Dwyer v. Railroad, 108 Mo. App. 152, 159; Wood on Master & Servant, sec. 307.] It is not necessary to the master's liability that the immediate wrongful act of the servant be done in the master's business, for that would imply that the master was prosecuting a wrongful business. If the act by the servant, though wrongful, misjudged, and unnecessary, is done in carrying out, or prosecuting the duties which have been devolved upon the servant, the master is liable. Now all know that it is the duty of a railway station agent to protect the station property falling under his immediate observation, where he reasonably may, and to protect those invitees rightfully assembled there, from unlawful disturbance. Suppose he should brutally assault a small child at the station, who with its parents was awaiting a train, because he thought it was making a noisy disturbance. Would not the railway company be liable for his act? In the instance involved in this case, if plaintiff was intoxicated and making a disturbance by loud and profane language and other offensive deportment, or conduct, it was the agent's duty to call in the aid of an officer to remove or suppress him and to that end to ask his arrest. But if in the performance of his employment, he pounced upon plaintiff who was sober and only making natural and rightful inquiries concerning his being refused entrance to the train for which he had bought the ticket but a few moments be-

fore, he committed a gross wrong for which his employer is liable. The case of Melton v. Railroad, 193 Mo. 46 and Gibson v. Ducker, 170 Mo. App. 135 are not like cases to this and are not applicable.

The next objection is based on the proposition advanced by defendant that "one is not guilty of false arrest if a warrant is sued out within a reasonable time." In support of this there appears in the case some evidence that a warrant was issued for plaintiff on the next day. We can dispose of this point in this particular by the fact that the petition is not founded on a wrongful arrest without a warrant. His action is for a wrongful arrest and imprisonment. The manner of his arrest, nor the technical observation of the forms necessary to legally justify an arrest, do not concern him. His action is based on the theory that he, an innocent man, at the request of defendant's agent, was wrongfully apprehended and incarcerated.

But defendant's argument under this point comprehends a broader proposition than the statement made of it. The idea advanced is that plaintiff was arrested without a warrant, but within a reasonable time a complaint was filed and a warrant duly issued. That the case was docketed for trial, but plaintiff quit the jurisdiction of the court and the case is yet pending. And it is claimed that a case for either malicious prosecution, or false imprisonment, does not lie until the proceeding is disposed of, since if the defendant is found guilty, there is no false imprisonment.

This is not an action for malicious prosecution. It is for false imprisonment. But conceding that in all cases of false imprisonment, where there has been no delay in the prosecution under a proper complaint and warrant, it would be necessary for the plaintiff to show that the prosecution resulted in his acquittal, we think if it appears that the prosecution has been abandoned by the State or city without trial, it is tan-

tamount to an acquittal.  In such case, the fact that the
Judge, or Court, has not entered a formal entry of
discharge or dismissal, ought not to bar the action of
the injured party.  In this case the record shows a
complaint and warrant made and issued on the next
day after plaintiff was said to have been intoxicated.
As has been said, the case was set for nine o'clock, a.
m., October 31, 1913, when plaintiff appeared and
pleaded, not guilty.  The case, on motion of State, over
plaintiff's objection, was continued until 1: 30 p. m.,
plaintiff entered into his personal recognizance for
$100 for his appearance at that hour.  Nothing further
appears.  No further steps were taken and no further
effort made by the prosecution.  There the matter
dropped and plaintiff testified that when he returned
at the hour named no one was present and he after-
wards, on that day, went on to his home at Belleville,
a town not far away.  The magistrate testified that
plaintiff objected to putting the case over to 1:30
o'clock as he was anxious to get home that afternoon.
He therefore set the case at 1: 30 p. m., for that reason.
Plaintiff admitted he did not return at that time, nor
until some time late in the afternoon.  The magistrate
would not deny, on cross-examination, that this record
was not written until perhaps six months after the
date named therein.  Considering that it was his rec-
ord, we think his testimony practically conceded that
no record was made until several months afterwards.
We think that in such circumstances the case should
be considered as abandoned by the prosecution and
that plaintiff, for the purposes of maintaining this
action, was as effectually discharged as if an entry of
record to that effect had been made.

Defendant made an attempt to submit this question
to the jury by offering refused instruction, "J."  The
instruction was rightfully refused for the reason that
it omitted the essential hypothesis whether the case

was in fact yet pending or the prosecution had been abandoned. It is not necessary to say whether, considering the fact, along with the other evidence, that for more than two years nothing has been done towards the prosecution, the plaintiff living all the while in a near-by town, the trial court would have been justifiable in declaring an abandonment, as a matter of law.

It was charged in the second count of the petition that plaintiff was unlawfully arrested and "cast into jail and detained from six o'clock p. m. until the next day to his damage in the sum of five thousand dollars actual and ten thousand punitive damages." Under this charge an instruction authorized the jury to consider, among other things, plaintiff's loss of time, and interference with his business. The petition does not charge damage from these things, and evidence should not have been admitted to prove such damage. But we think the verdict shows that no substantial injury resulted which may not be cured by a remittitur. Such damages are recognized in this State as compensatory and the verdict assessing compensation was only fifty dollars. We are assuming that defendant saved the point in its motion for new trial, though it is doubtful if it did. Subdivision 9, is the only one referring to the matter of admitting improper testimony and that is not specific. It does not state that the evidence broadened the petition, or that the matters thus proven were not pleaded. That particular part of the case is not briefed.

Defendant's point four concerning plaintiff's instruction, and also his objections to numbers 5 and 6, are unsubstantial.

The trial court gave the following definition of malice; "Malice as here used does not mean ill will or spite, but the intentional and willful doing of a wrongful act in a wanton or oppressive manner and with a

reckless disregard of the rights of the person affected thereby." In Goetz v. Ambs, 27 Mo. 28, it is said that malice "means the intentional doing of a wrongful act without just cause or excuse." That case has been cited with great frequency by the Supreme and Appellate courts. We discussed the meaning of such definition in Trauerman v. Lippincott, 39 Mo. App. 478. The Supreme Court did so in McNamara 'v. Transit Co., 182 Mo. 676, and Ferguson v. Railroad, 177 S. W. 616, and so did the Springfield Court of Appeals in Summers v. Keller, 152 Mo. App. 626. It seems to be agreed in these cases that the thing done must not only have been wrongful, but it must have been known to be wrongful; and though it must be conceded that one may intentionally do a wrongful act without just cause or excuse, and not know it to be wrongful, yet the expression as used in Goetz v. Ambs is understood to mean that the accused party knew the act was wrong when he did it. This view of our courts does not meet with the approval of some decisions in other States (Keiner v. Collins, 161 Ky. 696, and authorities therein cited), nor of Bishop and Cooley, but under our decisions the instruction must be held to be correct.

To the complaint of excessive damages, we answer that accepting the case as made for plaintiff, the sum allowed ($1520) is quite moderate.

If plaintiff will remit fifty dollars, the compensatory damages allowed on the second count, within fifteen days the judgment will be affirmed, the cost of the appeal to be taxed against him, otherwise it will be reversed and the cause remanded. All concur.

PER CURIAM.—The order to remit fifty dollars was subsequently changed to an order to remit forty-nine dollars and ninety-nine cents, leaving a judgment for nominal damages in the sum of one cent.

## ON MOTION FOR REHEARING.

ELLISON, P. J.—Defendant insists that instead of permitting plaintiff to cure the error in his instruction on the measure of compensatory damages under the second count, by a remittitur, we should remand the cause for another trial. Defendant says "that it is not within the province of this court to state that if the damage instruction had been proper, the jury would necessarily have found any actual damage." "In other words," says defendant, "had the jury been properly instructed upon the issue of actual damages on the second count, the finding of the jury might have been in the negative. Hence, this court is not justified in assuming that the jury would have found under a proper instruction any actual damages whatsoever, and that in the absence of a finding of actual damages, punitive damages cannot be allowed."

The answer to this is that under the second count in the petition, in connection with the finding of the jury, there was bound to be a finding of at least nominal damages, regardless of the unpleaded matter in the instruction. It is pleaded in the petition that plaintiff was wrongfully, unlawfully and maliciously, and without lawful authority, arrested and cast into jail and detained several hours. There was no dispute about the arrest and imprisonment and the jury have found that it was wrongful, hence a verdict for some amount of actual damages was imperative, even though it be no more than for a nominal sum; the wrong "being of that character from which the law implies such damages." [Courtney v. Blackwell, 150 Mo. 245, 277; Hoagland v. Amusement Co., 170 Mo. 335, 345.] And nominal compensatory damages will support a verdict for punitive damages. [Lamport v. Drug Co., 238 Mo. 409.]

We are satisfied that, under the evidence, we have properly disposed of defendant's complaint as to the issuance of a warrant and an abandonment. The motion for rehearing is overruled. All concur.