JOHN H. ALLEN, Respondent, v. EDWARD LIGHT COMPANY, a Corporation, and EDWARD C. LEFKOVITS, Appellants.

Kansas City Court of Appeals. May 23, 1921.

1. **SLANDER: Corporations: Petition Against Corporation and Its President for Slander, Held to State a Cause of Action.** In an action for slander against a corporation and its president, a petition which alleged that one uttering slander was employed by defendant to confront and accuse plaintiff of theft, that in making the statement he acted within the scope of his employment, and that defendants ratified his acts in so doing stated a cause of action against defendants, although petition did not make such person a party to the suit.

2. ———: ———: **Parties: A Corporation May Slander.** It is now well established there may be slander by a corporation.

3. ———: ———: **Master and Servant: Employee Uttering Slander, as Such, Cannot be Made Party in an Action Against His Employer,**

the Employee Being Liable for His Own Slander. Where one was employed to confront and accuse plaintiff of stealing goods from defendants, he cannot be made a party in an action against his employer, the defendant, for slander, as he would not be liable for employer's slander, but only for his own.

4. ———: Publication: Slanderous Words May be Spoken to and Not of Plaintiff When Other Persons are Present and Hear Words Spoken. There is sufficient publication of a slander, where the slanderous words are overheard solely by the defendant, and his agents, in the slander, in the face of the defendants' contention that under plaintiff's petition the defendant and his agents are one.

5. ———: Slander Per Se: Where Words Used Charge Another With Being a Thief They Are Slanderous Per Se. Where the plaintiff is accused by the defendant and his agents of being a thief, the words used are slanderous *per se.*

6. ———: Pleading: Not Necessary to Allege in Petition That Defendant Knew Words to be False and Untrue. A petition in slander need not state that the person speaking the slanderous words knew them to be false and untrue, as an honest belief in the truth of the charges is no defense to an action of this kind.

7. ———: Agency: Sufficient Evidence to Support Allegation That Defendant Employed Agent to ''Confront and Accuse Plaintiff'' of Being a Thief. Where the plaintiff's evidence showed that the defendant called plaintiff into a room where he was confronted by two agents of the defendant, who accused plaintiff of being a thief, and when plaintiff appealed to defendant, the defendant himself, continued the accusation, *held,* there was sufficient evidence to support an allegation in petition that the agents were employed to confront and accuse plaintiff of being a thief.

8. ———: Parties: Joinder: Slander by Agent: Publication Can be the Joint Act of Two or more Persons in Slander Only When There is Agency Between Them. Although publication in slander cannot be the joint act of two or more persons, yet where a person commits a slander acting as the agent of two persons, they are both liable for the utterances of their agents.

9. ———: Instructions: An Instruction Which Assumes an Unnecessary Burden is Not Erroneous. An instruction which varies from the petition, in that the former uses the language, "confront and interview," and the latter, ''confront and accuse,'' is not erroneous because the jury is asked in the remainder thereof to find facts which show that the defendants ratified the acts of their agents, and, therefore, the statement in the instruction that the defendants employed another to confront and interview plaintiff was an unnecessary burden assumed by the plaintiff.

10. ——: ——: Malice: Instruction Defining Elements of Malice, Held Proper. An instruction defining malice is not erroneous which says that malice may be inferred from the fact that the words uttered were false and untrue, and were uttered knowingly and intentionally, and without legal justification and excuse.

11. ——: ——: Instruction Authorizing Jury to Disregard Statement if Given Under Coercion or Duress Was Not Erroneous as Being a Comment on Evidence. An instruction for plaintiff telling jury to disregard signed statement of plaintiff, if they find it was given under coercion and duress is not a comment on the evidence where an instruction given for the defendant is the converse of the instruction complained of, and if there is any error in plaintiff's instruction, it was joined in by defendants' instruction.

12. ——: ——: An Instruction Which Requires Plaintiff to Prove Substantially the Words Charged is Not Erroneous Even if Court Adds Other Words Which do Not Change Meaning of Instruction. There is no error in an instruction which reads that plaintiff is required to prove substantially the words charged, and that proving words of similar import to those charged is not sufficient, even though the court adds a few words which do not substantially change the meaning of the instruction.

13. ——: ——: An Instruction Which Places the Burden on Plaintiff of Proving Justification or the Truth of the Words Charged to Have Been Slanderous is Misleading as Such Burden is on the Defendant. The burden of proving justification or truth of the words charged in an action for slander is on the defendant.

14. ——: Trial: Weight of the Evidence: Weight of the Evidence for Jury and Trial Court. The weight of the evidence is for the jury and the trial court and not for the appellate court.

Appeal from the Circuit Court of Jackson County.— Hon. O. A. Lucas, Judge.

AFFIRMED.

J. C. Reiger and T. L. Carnes for respondent.

Samuel Eppstein for appellant.

BLAND, J.—This is an action for slander. There was a verdict and judgment for plaintiff in the sum of $1000 compensatory and $3000 punitive damages and defendants have appealed.

The facts show that defendant corporation conducted in Kansas City, Missouri, a wholesale and retail business in gas and electrical fixtures, and the like; that defendant Lefkovits was the president, manager and owner of the defendant corporation; that on March 14, 1919, plaintiff was employed by the defendant corporation and was in charge of the sales department. It was his duty "to look after the business in general." He had power to make small donations to purchasers. On said day he sold a bill of goods to the wife of a minister for use in a church at Mt. Washington, a suburb of Kansas City. The amount of the sale was $12.95. When he gave her a receipt for the money she remarked, "I wish I had bought a chain for the chain hanger." Plaintiff then told her he would donate that. She did not take the goods with her as they were to be sent. Plaintiff went to the foot of the stairs and called one Clark, who was in charge of the shop room in the basement, showed him the order and told him when the order went out to put in a chain for the chain hanger and Clark said, "If you are donating the chain why don't you make it up right and donate it (the chain hanger)?" and plaintiff replied, "All right, go ahead." The value of the things donated was $1.10. Plaintiff's statement that he would donate the chain was made in the presence of another employee by the name of Jacoby. Plaintiff testified that he thought defendant Lefkovits was in the room downstairs at the time.

Lefkovits was told before the goods went out that "there is more merchandise going out than paid for." Upon hearing this he decided to "test the matter out." So he went to the Harb Detective Agency and employed a detective named Milton to go to the minister's house and investigate he matter and see "whether there was more merchandise delivered than bought and paid for and report to me." Milton, together with Jacoby, went out to the minister's house and investigated the matter and Milton reported to Lefkovits the afternoon of March 15th. Late that afternoon Milton and another detective by the name of Valleau, who was likewise an employee of

the Harb Detective Agency, came to defendant's place of business and went into a small room in the rear. Lefkovits then called plaintiff and took him to the room where the detectives were and Lefkovits shut the door and stood in front of it and introduced plaintiff to Milton and and Valleau. Milton pulled his coat back and said, "I am a detective, How much of this man's goods have you stolen?" Plaintiff replied that he had not "stolen a penny's worth." Milton then said to plaintiff, "You have been stealing—you have been stealing goods," and said he had papers in his pocket to show that he could have plaintiff put in the penitentiary inside of a week. He then pulled the papers from his pocket and said to plaintiff, "How about the job at Mt. Washington that you sold?" plaintiff replied explaining that he made a donation and had authority to do so and turned to Lefkovits and asked him if he had not such authority and Lefkovits replied, "No, you stole that chain hanger and you sold two batteries for one and turned in money for one." "You stole that chain hanger, and you also sold two batteries for one." It appeared that Lefkovits' daughter, who had been acting as cashier, had told Lefkovits that plaintiff had sold two batteries and had turned in money for only one. Plaintiff replied to the accusation in regard to the batteries that he had not sold two batteries and accounted for but one, but that a woman brought in a battery and bought a new one and that she wanted to take the old one with her and he wrapped up the old one with the new. Lefkovits contended that plaintiff had no right to make a donation except with Lefkovits' consent.

Lefkovits then called Milton outside of the room where they remained for two or three minutes and came back and Milton again accused plaintiff of stealing the chain hanger and Milton became angry and called plaintiff a "son-of-a-bitch and a thief." Lefkovits and Milton then went outside again and shortly returned when Milton cursed plaintiff "for a minute" and plaintiff said to him "Treat me as a gentleman" to which Milton said,

"Gentleman, hell; you are a thief." Milton then jumped up and pulled a revolver and handcuffs from his pocket and said, "You are under arrest, swear out the warrant, E. C., (meaning Lefkovits) and we'll take him now." Milton and Lefkovits again went out of the room and shortly returned and Lefkovits and Milton wrote the following—

"K. C. Mo., Mch. 15-19.

"This is to certify that I, J. H. Allen, now employed by the Edward Light Co., 1317 Grand Ave. hereby agrees to reimburse the Co. for one chain hanger the value of $1.10 which I gave to the wife of a Pastor. I did not own this mdse. and made no accounting of it. I am also willing to reimburse the Co. for the expense of an investigation which was made by them on acct. of this action. The amt. of this expense being $8.12."

They asked plaintiff to sign the writing, Lefkovits saying, "You sign it and we will drop it." Plaintiff did not want to sign the statement and demurred but on account of a threat to take him to jail, and it being Saturday and fearing that he might have to stay in jail until Monday, and never having been arrested before, he finally signed the statement to prevent his arrest, although he stated at the time that it was not right for him to sign it, that it did not state the facts. The amount mentioned in the statement was aferwards taken from plaintiff's pay check. After plaintiff signed the statement Lefkovits said to plaintiff, "Let's forget it, you work on as if nothing had happened. I wont say anything to anybody and you don't either." Plaintiff replied, "I can't forget it." Lefkovits then left the room. Plaintiff remained in the room a few minutes and then went out to see a friend about the matter. He voluntarily quit his employment the Thursday or Friday following this interview, which occurred on Saturday.

The petition is lengthy and it would serve no useful purpose to copy it in this opinion; suffice it to say, that it

alleges the facts about as we have stated them. It charges that Lefkovits was president, treasurer and general manager of the corporation and owner of its capital stock; that Lefkovits and the corporation employed Milton and Valleau to come to the place of business of defendants and "there confront and accuse this plaintiff of stealing goods from the defendants," and that Milton in the pursuance of his employment by the defendants "in the presence and hearing of Valleau and said Lefkovits, falsely, wantonly and maliciously spoke of and concerning plaintiff the following false, malicious and defamatory words, to-wit: 'How much of this man's goods have you stolen'?" and "falsely, wantonly and maliciously spoke of and concerning the plaintiff the following false, malicious and defamatory words, to-wit: 'We have papers here to show that you have been stealing stuff,' and, continuing, maliciously, falsely and wantonly uttered the following false, malicious and defamatory words, to-wit:' Now, Mr. Allen, are you sure you have not been stealing this man's goods? Do you swear to that?'" The petition alleges that Lefkovits for himself and for the corporation "in the presence of said Milton and said Valleau, falsely, maliciously and wantonly uttered of and concerning the plaintiff the following false, malicious and defamatory words, to-wit: 'No, you have been stealing my goods. You stole that chain hanger.' And, continuing, said Lefkovits then and there and in the presence of said Milton and said Valleau, falsely, maliciously and wantonly uttered of and concerning this plaintiff the following false, malicious and defamatory words, to-wit: 'You sold two batteries for one, and stole one.'" The petition then alleges that Milton acting within the scope of his employment by the defendants and in the presence of Valleau and Lefkovits, "falsely, wantonly and maliciously uttered of and concerning the plaintiff the following false, malicious and defamatory words, to-wit: 'You are a son of a bitch and a thief'" and "falsely, maliciously and wantonly uttered, in the presence of said Lefkovits and said Valleau, the following false, malicious and de-

famatory words of and concerning plaintiff, to-wit: 'Gentleman, hell, you are thief.' ''

It is insisted by appellants that their objection to the introduction of any evidence being offered under the petition in the case should have been sustained for the reason that the petition does not state facts sufficient to constitute a cause of action; that Milton not being made a party defendant his statements are not slanderous and binding on the defendants. The petition alleges that Milton was employed by both defendants to ''confront and accuse this plaintiff of stealing goods from the defendants,'' and that Milton in uttering the slanderous words was acting for the defendants within the scope of his employment. It also alleges facts showing that defendants ratified the acts of Milton in slandering plaintiff. We think there is no question but that the petition states a cause of action against the defendants although it does not make Milton a party. [Davis v. Chi., R. I. & P. R. Co., 192 Mo. App. 419, 423, 424; Gibson v. Ducker & Son, 170 Mo. App. 135, 148, 149; Steppuhn v. Railroad Co., 199 Mo. App. 571, 580, 581; Carp v. Ins. Co., 203 Mo. 295, 350, 351.] It is now well established there may be slander by a corporation. [Fensky v. Maryland Casualty Co., 264 Mo. 154.] We do not see how Milton could well have been made a party for he would not have been liable for Lefkovit's slander but only for his own. [Newell, Libel and Slander, sec. 487 (3rd Ed.).]

It is insisted that there was no publication for the reason there was no showing that the words complained of were communicated to a third person; that plaintiff in his petition pleads that defendants employed two detectives, Milton and Valleau, to confront and accuse plaintiff; that no outsider heard the alleged slander, Lefkovits, Milton and Valleau under plaintiff's petition being one and the same as the defendants. We think there is no merit in this contention. The petition alleges that four men were present, plaintiff, Lefkovits, Milton and Valleau. Valleau heard all that Milton said and Milton and

Valleau all that Lefkovits said. We think there is no question but there was sufficient publication although it is true that in order to constitute slander the slanderous words must be spoken in the presence of and be understood by some other person than plaintiff and defendant. [Walker v. White, 192 Mo. App. 13.] As to the rule in libel, see Bedell v. Richardson Lubricating Company, 226 S. W. 653. However, it is enough that the slanderous words were heard by a single person. [25 Cyc. 366.] It is no defense to an action for slander that the words were spoken to and not of plaintiff when other persons were present and heard the words spoken. [25 Cyc, 365, 366.]

It is insisted that the words spoken are not slanderous *per se* and the failure to plead an innuendo is fatal. There is no question but that the words charged in connection with the facts with which they were used, all of which were alleged, were actionable *per se.* [Johnson v. Bush, 186 Mo. App. 107; State ex rel. v. Reynolds, 273 Mo. 131, 140; Callahan v. Ingram, 122 Mo. 355, 368, 369; Krup v. Corley, 95 Mo. App. 640; 25 Cyc. 300-303.]

It is insisted that the petition fails to state a cause of action for the reason that it fails to allege that Lefkovits and Milton spoke the words knowing them to be false and untrue and that they were untrue. The language we have quoted from the petition in effect charges that the words uttered were false. [Haskins v. Jordan, 123 Calif. 157. Fensky v. Casualty Co., supra.] It is not necessary to allege that the person speaking the slanderoups words knew them to be false and untrue. Defendants in order to defeat an action of this kind cannot rely upon their honest belief in the truth of the charge. [Morgan v. Rice, 35 Mo. App. 591; 25 Cyc. 414.]

It is insisted that the court erred in failing to give defendants' instruction in the nature of a demurrer to the evidence, it being contended that there is no evidence that defendants employed Milton "to confront and accuse" plaintiff as alleged in his petition. Defendants' evidence tends to show that Milton was employed for the purpose

of investigating and reporting and this is the only direct evidence as to Milton's initial employment. However, the undisputed evidence shows that Lefkovits took plaintiff into the room where Milton was waiting with the information that he had obtained. It was the intention to confront plaintiff with this evidence and get him to admit other thefts, if any. Milton testified on behalf of defendants that Lefkovits wanted him to find out if the goods were taken by Allen and what had become of them; that he went to Mt. Washington and investigated the matter of the chain hanger and came back and reported to Lefkovits and later went to defendants' place of business and suggested to Lefkovits that "we talk to this man and try to ascertain what other stuff he had taken, if any, and what had become of it." Milton testified that Lefkovits sent for plaintiff and requested plaintiff to come into the room "that we want to talk to him." According to plaintiff's evidence Milton uttered the first slanderous words and after he finished Lefkovits joined in the accusations when appealed to by plaintiff to refute the charges of Milton, thus adding insult to injury. If there could be imagined any case where a principal ratified the acts of his agent, Lefkovits did that in this instance if plaintiff's evidence is to be believed. The evidence is sufficient to sustain the charge in the petition that the detectives were employed to confront and accuse the plaintiff, and is of such a character as to sustain even a much broader allegation than that.

It is insisted that Lefkovits and the corporation could not be sued, that either one or the other is liable and not both. It is true that in slander, but not in libel, publication cannot be the joint act of two or more persons where there is no agency between such persons, in other words each is responsible for his own slander and not that of the other. [Newell, Slander and Libel, sec. 487, (3rd Ed.).] However, in this case the evidence shows that Lefkovits owned the defendant corporation. There was, therefore, a close connection between him and the cor-

poration and the jury might well say under the evidence that whatever he did he did for himself as well as for the corporation and that Lefkovits in uttering his slanderous words was acting for the corporation. Of course, Lefkovits was liable himself for his own words. From what we have said the jury might well find that Milton when he uttered his slanderous words was acting as the agent of Lefkovits and the corporation, and if such were the facts, both Lefkovits and the corporation are liable for the utterances of Milton. [Fensky v. Maryland Casualty Co., supra; McGinnis v. Chi. R. I. & P. Rd. C., 200 Mo. 347, 359, 360, 362, 363.]

It is insisted that plaintiff's instruction No. 1 is erroneous, said instruction is as follows:—

"The court instructs the jury that if you find from the evidence that on or about March 15, 1919, the defendant Lefkovits, called the plaintiff into a room in the defendants' place of business, and that on entering said room plaintiff found two men therein, one named Milton and the other named Valleau, and that said Lefkovits then and there closed the door to said room and stood against the same, and if you further find that said Milton, thereupon, showed the plaintiff a badge that he, Milton, was then wearing and stated that he, Milton was a detective, and that said Milton then and there, and in the presence of said Lefkovits and said Valleau, pointed his finger at the plaintiff and made to the plaintiff the following statements, or any of them, to-wit: 'How much of this man's goods have you stolen?' or 'We have papers here to show that you have been stealing stuff, or 'You are a son of a bitch and a thief,' or 'Gentleman, hell, you are a thief,' and if you find that said statements were false and untrue; and if you further find that said Lefkovits had employed said Milton to be present at said time and place and to confront and interview the plaintiff, and that said Lefkovits was then and there aiding and abetting said Milton in said actions and inducing and procuring said Milton to make said state-

ments to the plaintiff; or if you find from the evidence that the defendant, Lefkovits, at said time and place and in the presence of said Milton and said Valleau made the following statements or either of them to the plaintiff, to-wit: 'No, you have been stealing my goods, you stole that chain hanger,' or 'you sold two batteries for one, and stole one,' and if you further find that said statements were false and untrue, then you verdict will be in favor of the plaintiff and against the defendant, Lefkovits.

"And if, in addition to finding the facts as above stated, you further find from the evidence that the business of the defendants, as shown in the evidence and heretofore mentioned in this instruction, was at the time mentioned, and for a long time previous thereto had been conducted in the name of the defendant, Edward Light Company, and that during the time hereinbefore mentioned and for a long time previous thereto, the defendant, Lefkovits, owned practically all of the capital stock of said Edward Light Company, and was the president and manager of the same, and that, during the transactions and statements hereinbefore mentioned, said Lefkovits was acting for and in behalf of said Edward Light Company, then your verdict will be in favor of the plaintiff and against both of the defendants in this case."

In this connection it is insisted that the instruction is a comment on the evidence. We fail to see how it can be so construed: It is insisted that the instruction does not conform to the petition in that it tells the jury that they might find for plaintiff if Milton was employed by the defendant "to confront and interview the plaintiff" while the words used in the petition are "to confront and accuse plaintiff." We think that this difference between the wording of the petition and the language of the instruction is immaterial for the reason that the instruction has the jury find sufficient facts which, if true, show that Lefkovits and the corporation ratified the acts

of Milton in slandering plaintiff. The instruction expressly has the jury find that Lefkovits made the initial employment of Milton. It also allows the jury to find that Lefkovits at all times acted for the corporation and it submits facts which if found by the jury to be true, constituted ratification by both defendants as a matter of law of Milton's acts in slandering plaintiff: In having the jury find that Milton was employed "to confront and interview the plaintiff" as unnecessary burden was assumed by plaintiff and there was no reversible error.

From what we have said each one of the slanders submitted in the instruction are actionable *per se,* and the contention that both Lefkovits and the corporation could not be liable for the various slanders in the instruction, is not well taken.

Complaint is made of plaintiff's instruction No. 2, for the reason that it does not properly define malice. The instruction tells the jury that—

" . . . in order to find that said words were uttered with malice, it is not essential that such malice should be proved by express and direct testimony; but such malice may be inferred from the fact, if such is the fact, that such words were uttered, and were false and untrue, and were uttered knowingly and intentionally and without legal justification or excuse."

Defendants have not pointed out wherein his definition is defective and we find nothing wrong with it. [Buckley v. Knapp, 48 Mo. 152, 161.] The petition charges that the words were "malicious" and were "maliciously" uttered.

It is insisted that plaintiff's instruction No. 4 is a comment on the evidence, said instruction reads as follows:—

"The court instructs the jury that if you believe from the evidence that the plaintiff signed the statement (offered in evidence) under coersion and duress, and not of his own free will, then, in arriving at your verdict, you

may disregard said statement and give no effect to the same.''

. Defendants' instruction No. 7 reads as follows:—

''The court instructs the jury that if you find and believe from the evidence that the defendant did not say the following: 'No, you have been stealing my goods;' 'You stole that chain hanger;' and 'You sold two batteries for one and stole one;'' and if you further find and believe from the evidence that the plaintiff knowingly and wrongfully, took the goods of the defendant, and without authority, and without making any charge or entry thereof; sent a certain chain hanger and other minor attachments to the M. E. Church on the 14th day of March, 1919, and thereafter paid the price of said chain hanger, together with the costs of investigation; and further stated that it was his written confession, as set out in plaintiff's petition; and if you further find and believe from the evidence that said written confession of plaintiff was made on his own free will and accord, then your verdict must be for the defendant.''

Plaintiff's instruction No. 4 is the converse of defendants' instruction No. 7 and if there is any error in plaintiff's instruction, it was joined in defendants' instruction.

It is insisted that the court erred in refusing defendants' instruction No. 14 and in giving the instruction as modified. The instruction as given reads as follows:—

''The court instructs the jury that it is not sufficient that the words proved are of equivalent meaning with those charged by plaintiff *and shown by evidence,* and unless you find and believe from the evidence that the words proved are substantially the same words charged, your verdict must be for the defendant.''

The instruction as offered is substantially the same as that given except that the words we have italicized were not in the one offered. There is no complaint in the motion for a new trial in reference to the court's giving the court's instruction No. 14 but there is com-

plaint of the court's refusal to give defendants' instruction No. 14. The instruction as given reads substantially the same as defendants' given instruction No. 3, which tells the jury that—

"plaintiff must prove to the satisfaction of the jury, by a preponderance of the evidence, that defendant uttered the words charged as slanderous *substantially those words shown in the evidence; and proof that he uttered equivalent words or words of similiar import will not do.*"

(Italics ours). The court, no doubt, amended defendants' instruction No. 14 to conform to defendants' given instruction No. 3 and defendants having asked and procured their instruction No. 3 should not complain of the action of the court in harmonizing all the instructions with the one given. We think the sense of instruction No. 14 as given is that plaintiff was required to prove substantially the words charged and that proving words of similar import to those charged was not sufficient. If this is what the instruction means, of course, there was no error in the giving of it and the court did not substantially change the instruction as offered.

There was no error in refusing defendants' instructions Nos. 9 and 10 on the burden of proof, for the reason that they were misleading on the question as to who had the burden of proving justification or the truth of the words charged to have been slanderous. This burden was on defendants. [ 25 Cyc. 413. ]

It is insisted that the verdict is against the weight of the evidence and is the result of passion, prejudice and mistake, and is for the wrong party. We have carefully read the record and find there is nothing involved except the mere weight of the evidence, which was for the jury and the trial court and not for this court. [Terry v. K. C. Rys. Co., 228 S. W. 885; Harmon v. Irwin, 219 S. W. 392; Robertson v. Kochtitzky, 217 S. W. 543; Abernathy v. Mo. Pac. Ry. Co., 217 S. W. 568.]

The judgment is affirmed. All concur.