## L. D. TOSH, Defendant in Error, v. C. H. KIRSHNER, Plaintiff in Error.

In the Kansas City Court of Appeals, March 5, 1923.

1. **BROKERS:** Principal and Agent: Question Whether Broker Produced Realty Company as Actual Purchaser of Property Before it Resold Same to a Customer so as to Entitle Broker to a Commission, Held for the Jury. In an action to recover a real estate broker's commission for selling property of defendant, *held* in view of the evidence and the terms of a written contract between defendant and a realty company, the question whether the realty company was a prospective and actual purchaser of the property before it was resold to a customer so as to entitle plaintiff to a commission, was one for the jury, and court did not err in refusing defendant's peremptory instructions.

2. **EVIDENCE:** Conclusion: Statement of Broker That His Agency to Sell Land Did Not Depend upon Unsuccessful Deal, Held Properly Admissible. Where defendant, in an action by a broker to recover a commission for sale of property, maintained that a realty company, which broker contended he produced as actual purchaser, was by reason of a written contract in evidence, the agent of defendant in sale to him of the property, and that the contract with plaintiff had been cancelled by defendant before a sale was consummated, the plaintiff while testifying was asked, concerning the realty company's deal, with an Ohio prospect which it was unable to make, the following question, "and the whole thing dropped there," to which plaintiff answered, "I had nothing to do with the Ohio deal, my agency didn't depend on the Ohio deal," as against objection that answer was a mere conclusion, *held* admissible as bearing upon one of principal issues in the case.

3. **INSTRUCTIONS:** In an Action to Recover Real Estate Commission, an Instruction Covering Entire Case and Directing Verdict for

213 M. A.—17

Plaintiff, Need Not to Include Element Constituting Defense Thereto. In an action to recover real estate broker's commission, an instruction purporting to cover entire case and directing a verdict for plaintiff, need not include the defense of revocation of his authority to make the same, or his abandonment of his agency and the consummation of a new deal.

4. ——: An instruction for Plaintiff, Omitting Defensive Theory Held Cured by Instruction for Defendant Which Submitted Such Defense. Any error in omitting the elements, of defendant's theory of defense from an instruction given for plaintiff, covering entire case, and directing a verdict, held cured by instruction for defendant submitting the facts constituting defendant's defense.

5. ——: Evidence: Limitation of Evidentiary Effect of a Check Introduced in Evidence Showing Amount of Commission Paid Realty Company by Defendant Owner, for the Purpose of Showing There Was a Deal Made With Parties Whom Plaintiff Interested, But Not to Show Plaintiff Was Entitled to Commission, or That Defendant Was Liable Therefor, Held Proper. Where broker sued for commission on sale of property made by realty company with whom plaintiff dealt, but which company in thereafter dealing direct with defendant, the owner, sold the property, and where the issue was whether plaintiff's authority to sell was revoked or abandoned, the introduction of a check in evidence showing amount of commission defendant paid to realty company was properly limited by instruction for the purpose of showing that there was a deal made with the real estate company whom plaintiff interested in the transaction and that a sale was finally made, but that it could not be used to show plaintiff was entitled to a commission, or that defendant was liable therefor.

6. BROKERS: Procuring Cause: Whether Broker Was Procuring Cause of Sale, Held One of Fact for Jury. Whether real estate broker was the procuring cause of sale of property entitling him to recover commission, held question of fact for the jury.

Appeal from the Circuit Court of Jackson County.—
Hon. Chas. W. German, Special Judge.

AFFIRMED.

Frank Yeoman for defendant in error.

Miller, Camack, Winger & Reeder for plaintiff in error.

ARNOLD, J.—This is an action to recover a real estate broker's commission. The suit was originally instituted and tried in a justice court in Jackson County, where on September 14, 1920, judgment was rendered in defendant's favor. An appeal was taken in due time to the circuit court of said county where trial to a jury on April 14, 1921, resulted in verdict and judgment for plaintiff in the sum of $500. Timely motions for new trial and in arrest were overruled and the cause is here by writ of error.

The record discloses that some time during the latter part of February, or the first of March, 1920, plaintiff who is a real estate broker, was employed by defendant to procure a purchaser for a six apartment building located at 3517-3519 Wyandotte Street in Kansas City, Mo., on a commission of $500, provided the property was sold for the price and sum of $18,500. There was no written contract of employment between the parties and no specification as to when the employment should end, so far as the record shows.

Plaintiff then interested the firm of Bertche-Parker Realty Co., doing business at Kansas City, Mo., as real estate brokers and as buyers and sellers of real estate for profit, and arranged a meeting between them and defendant, where negotiations relative to the disposal of the property were entered into.

The testimony of plaintiff tends to show that the Bertche-Parker Realty Co. entered the deal with the idea of purchasing and reselling the property at a profit, first securing a party to whom they might sell at a price over and above the upset price given them by the owner, They told plaintiff and defendant that they had in mind an Ohio man who would buy the property but this deal never matured, because of unsatisfactory terms. The testimony fails to show that plaintiff was instrumental in bringing the Ohio man into the deal.

It appears of record that the Bertche-Parker Company continued their efforts to find a purchaser for the flats, upon terms acceptable to defendant, and finally

succeeded in finding such purchaser in the person of one Mary Nevins, or the Nevins Estate.

Title to the real estate in question was in one Frank S. Stroheker. After some delay, involving the necessary disposition of a lot on Grand Avenue which it was proposed to trade in as part consideration on the apartment building, satisfactory terms were evolved and a contract entered into between Stroheker, acting for defendant, and the Bertche-Parker Realty Company, wherein said Stroheker is designated as seller and Bertche-Parker Company as buyer. This contract was introduced in evidence. An examination of it shows that, strictly speaking, it is neither a contract of sale of real estate nor a contract for a broker's commission. It partakes of the elements of both and is a sort of hybrid, as it were. The part partaking of the nature of a contract for the sale of real estate reads as follows:

"This contract, made and entered into this 5th day of June, 1920, by and between Frank Stroheker, the sell-.er, and Bertche-Parker Realty Company, the buyer.

Witnesseth: That seller has sold and agrees to convey as herein provided the following described real estate in Jackson County, Missouri, to-wit: All of Lot 18, in Block 9, Hyde Park, an addition in Kansas City, Jackson County, Missouri. Same being the real estate located at 3517-19 Wyandotte St. The seller is to convey said real estate subject to a first deed of trust, securing a note of $10,000 dated on or about the date of delivery of deed to said described property bearing interest at the rate of six per cent per annum, payable semi-annually and due as follows: $250 one year after date, $250 two years after date and $250 three years after date, $250 four years after date and $9000 five years after date. Said loan of $10,000 is to be procured through the agency of George O. Fluke and negotiated by Chas. H. Rechner. The seller to pay commission of $250 for the loan. If for any reason the said George O. Fluke fails to procure said loan then this contract shall become null and void. For the price and sum of twenty

thousand dollars, to be paid to the buyer as follows: Five hundred dollars at the signing of this contract, the receipt whereof is hereby acknowledged by the seller and which is deposited with Bertche-Parker Realty Company as part of the consideration of the sale, the balance whereof is to be paid in the following manner, to-wit: $4500 cash on delivery of deed as herein provided, and a second note of $5000 secured by second deed of trust on said real estate due three years after date and payable at the rate of $100 per month and interest. Said note to be executed by Mary Nevins in favor of the seller or his order. All deferred payments to be represented by notes secured by deed of trust on above described property containing usual provisions, drawing interest from date of deed at the rate of six per cent per annum, payable semi-annually, and monthly.''

Then follow clauses usually found in contracts for sale of real estate, relating (a) to payment of taxes by seller, (b) division of rentals between seller and buyer, (c) stipulation covering furnishing abstract, and correction of faults found therein. Up to this point there would seem to be no great difficulty in construing the contract as one for the sale of real estate, with Frank S. Stroheker, as seller, and Bertche-Parker Realty Co., as buyer. The part of the contract above quoted which reads ''said note to be executed by Mary Nevins in favor of the seller or his order,'' does not remove from the contract the element that the sale was made by Stroheker to Bertche-Parker Realty Company. The element of uncertainty is incorporated into the contract, if, indeed, it is an element of uncertainty, in the last clause thereof, as follows:

''If the seller has kept his part of the contract by furnishing good title as herein provided, and the buyer fail to comply with the requirements within five days thereafter, then the money deposited as aforesaid is forfeited by the buyer, and this contract may or may not be thereafter operative, at the option of the seller. The seller agrees to pay the Pertche-Parker Realty Co. the

sum of $1000 as full compensation for negotiating the sale."

The purpose and meaning of the contract must be construed in the light of the surrounding facts and circumstances in evidence. The sale and transfer of the property was consummated under the terms of said contract and the title thereto passed to the Nevins heirs. Thereupon the profits on the sale over and above the upset price were divided evenly between defendant and the Bertche-Parker Realty Company, the latter receiving a check, dated July 7, 1920, for $783, payable to the order of Bertche-Parker Realty Company, and signed by Frank B. Strohmeyer. Plaintiff thereafter, and upon the consummation of the deal, demanded a commission of $500 from defendant for having found a purchaser for the property. Payment was refused and this suit followed, with result as above indicated.

Defendant's first assignment of error is directed to the action of the court in refusing to give defendant's peremptory instructions at the close of plaintiff's case and again at the close of all the evidence. The decisive point in this appeal is embraced within this assignment. Plaintiff insists that he produced the Bertche-Parker Realty Company as a prospective and actual purchaser of the property, while defendant maintains that the Bertche-Parker Company, by reason of the written contract in evidence, became the agent of defendant in the sale of the property, and that the contract with plaintiff had been concelled by defendant before a sale was consummated.

This brings us to a discussion of the intent and purport of the contract. Its terms, being somewhat indefinite, we turn to the testimony of the parties thereto as to their understanding of it. Mr. Bertche testified that after plaintiff had presented the matter of the sale of the property to him and told him that defendant was the owner thereof, he (witness) went to the office of defendant and took the matter up with him and at that time mentioned that they "had a man in Ohio that

Tosh v. Kirshner.

would finance us against the purchase of this property . . . I had my correspondence and a telegram that I had received from this client and I showed them to Mr. Kirshner and showed him we were ready to do business providing he could meet those terms and also told him the way we would be operating and just what our interests would be, advising him this client would furnish the money and would be willing to protect us for a division of any profits on a basis of fifty-fifty over the purchase price . . ."

The terms of the Ohio man were not satisfactory to defendant, but according to the witness "he said . . . go ahead and work on this, he would be willing to protect us on the same kind of a proposition, and I think It was agreed he should give us, I think, ninety days in which to work out a deal on this property under those conditions.

"Q. What were those conditions? A. My recollection is Mr. Kirshner had proposed the property to us on a basis of eighteen-five net to him and that any profit over and above that we were to split fifty-fifty and he was to protect us as I say ninety days exclusive handling in order for us to work that property out on that basis. In the meantime we worked on the property and finally got into a deal wherein we were taking some trade, a vacant lot improved with a small building down there on Grand Avenue that would have worked us out a profit, but Mr. Kirshner, after looking at the property, decided he didn't want to take this property in; in other words, he didn't want to carry the value of this flat into this vacant; thought it would be too slow to get it out. . . . So we agreed to buy the flat from Mr. Kirshner at a price of $19,000, in fact we went into a sales contract with Mr. Kirshner on that basis; we had the contract drawn at a price of $19,000. In the meantime, I signed a contract with Mrs. Nevins, that is with Mr. Fluke representing her as her agent, and he contracted with us, he was dealing with us; we felt that we were dealing as owners of the property so far as Mr. Fluke

was concerned in our contract of exchange between us and Mrs. Nevins. Then as I say, Mr. Fluke signed a contract with me in which we sold him this lot for so much money; then I signed a contract with Mr. Stroheker, had the contract drawn against a price of $19,000 and we put the deal through on that basis. As I say we realized better than $19,000; we turned Mr. Kirshner over $19,000 in line with the sales contract that we executed.

"Q. You contracted directly with Mrs. Nevins for the sale of the property? A. Yes, sir.

"Q. And the deed to the property remained in a straw man until it was deeded over to Mrs. Nevins, did it? A. Well the title of the property—we never had taken title to the property."

The title remained in Mr. Stroheker, according to this witness, until the transfer was made to Mrs. Nevins. This testimony is corroborated by other facts and circumstances in evidence and is not refuted by defendant.

In view of this evidence and the terms of the written contract between defendant and the Realty Company, we must hold with plaintiff in his view that the testimony tends to show that the Bertche-Parker Realty Co. were the actual purchasers of the property in question. We have examined defendant's citations in this connection and find they do not apply to the facts herein, under the above ruling. The question as to what the real facts were was one for the jury, and we are not authorized to disturb their finding. It therefore follows that there was no error in refusing to give defendant's proffered peremptory instructions, and we so hold.

The second assignment of error is directed to the admission by the court of the following testimony of plaintiff:

"Q. And they (Bertche-Parker Co.) said they couldn't sell it and so told you? A. They could not handle the Ohio deal.

"Q. And the whole thing dropped there? A. I

had nothing to do with the Ohio deal; my agency didn't depend on the Ohio deal."

Defendant declares this answer was a mere conclusion of the witness in his own favor and that the court erred in not sustaining his objection thereto. In our opinion this testimony bore directly on one of the principal issues in the case and we do not see how defendant could have been harmed by its admission.

Further it is contended the court erred in submitting instruction No. 1, for plaintiff, as follows:

"The court instructs the jury that if you find from the evidence that plaintiff was employed by defendant to find a purchaser for the property described in plaintiff's statement, and you further find that plaintiff was the procuring cause of the sale finally consummated, then your verdict should be for the plaintiff in the sum of $500."

This instruction purports to cover the entire case and directs a verdict, and it is objected that it required the jury to find for plaintiff without regard to the alleged revocation of his authority to make the sale, or his abandonment of his agency and the consummation of a new deal. The rule of law in this State is that to entitle plaintiff to recover, he is required (1) to state in his petition facts which are necessary to constitute his cause of action; (2) to prove these facts by a preponderance of the evidence, and (3) to submit these facts to the jury under proper instructions. If plaintiff asks instructions embracing all the elements in his case and there is sufficient evidence tending to prove same, then he need not in clude in his instructions matters covering defendant's allegations. In Davis v. Railway Co., 192 Mo. App. 422, 182 S. W. 827, the court said:

"But conceding that the instruction should have embodied such defensive theory, it was cured by defendant's instruction 'D,' which stated such good faith belief to be a defense and directed that if the jury found that to be a fact to return a verdict for defendant on the first count. The decisions of the Supreme Court

to this effect are collated and discussed in Holman v. City of Macon, 177. S. W. 1078.'' [See, also, Clark v. Hammerle, 27 Mo. 55, 70; Wingfield v. Wabash Ry. Co., 257 Mo. 347, 166 S. W. 1041, and cases there cited; Minteer et al. v. Jenkins, 229 S. W. 402, and cases there cited.]

In the case at bar the alleged discharge of plaintiff as agent of defendant is a matter of defense and not a necessary element in plaintiff's right of action. Under the decisions above cited it is not reversible error to have omitted it from plaintiff's instruction No. 1, and had it been error, under the rule announced in the Davis case, supra, that error was cured by defendant's instructions D-1 and D-2. The first of these instructions told the jury that if plaintiff failed to sell to the Bertche-Parker Company, on terms fixed by defendant, defendant had a right to terminate his agency and engage Bertche-Parker Co. as agents for the sale of the property. The other reads as follows:

''The jury are instructed, if you find from the evidence that plaintiff Tosh made an attempt to sell the premises in question to said Bertche-Parker or a client or associate of theirs living in Ohio, but failed to do so because said parties would not purchase the same upon the terms fixed by plaintiff, and if you further find that the defendant thereafter advised the plaintiff that he could no longer have said propery for sale or show it for sale, then your verdict in this case must be for the defendant, even though you may further find that said Bertche-Parker, or someone secured by them, may have purchased said property of the defendant upon different terms than those upon which plaintiff was authorized to sell the same.''

It is evident that the jury had before them the question of the alleged discharge of plaintiff. We, therefore, hold against defendant in this contention.

It is further urged that the court erred in excluding competent, material and relevant testimony offered in behalf of defendant. This objection is directed to the

action of the court in limiting the purpose for which he admitted in evidence a check for $783, given by defendant to the Bertche-Parker Company in the final settlement between them, wherein the court used the following language:

"I will state to the jury now so there may be no misunderstanding about it, that this check does not prove or tend to prove whether or not Mr. Tosh is entitled to a commission from Mr. Kirshner or whether Mr. Kirshner is liable for commission; the purpose for which the court has permitted the evidence to go in is to show there was a deal made with the parties whom Mr. Tosh interested in the transaction so as to show there was a transaction finally made; whether Mr. Kirshner is liable for a commission or whether Mr. Tosh is entitled to a commission, this check does not tend to prove it one way or another."

The witness Parker had testified that this check represented the profits of the Bertche-Parker Realty Company in the transaction. One of defendant's contentions was that the Bertche-Parker Company became his agents, and that they finally consummated the sale. Plaintiff's contention on this point was that he was the procuring cause thereof. There was considerable testimony in support of the view that the Bertche-Parker Company bought the property and afterwards resold it for a profit. There was no error in the ruling of the court that the check could not tend to show whether or not plaintiff was entitled to a commission.

Finally, it is insisted that under the law and the evidence, the verdict should have been for defendant. It is argued in this connection, that in order for plaintiff to recover, he must show that he was the procuring cause of the sale upon which he depends for recovery of commission.

There can be no quarrel with this plain rule of law, but the question as to whether or not plaintiff did show that he was the procuring cause was one of fact for the

jury. There was much substantial testimony to this effect and the jury's verdict was against defendant. We find no reversible error of record.

Affirmed. All concur.